UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT G. FRANCE,

                              Plaintiff,

        v.

COUNTY OF WESTCHESTER, et al.,

                              Defendants.

Case No. 12-CV-5576 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Robert G. France
Wallkill, NY
*Pro Se Plaintiff*

Irma W. Cosgriff, Esq.
Reginald J. Johnson, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Robert G. France ("Plaintiff"), proceeding pro se, brings this Second Amended

Complaint against Westchester County ("County"), Sergeant Susan Hubbard ("Hubbard"),

Correction Officer Elgin Morton ("Morton"), and Correction Officer Bradley Roane ("Roane")

(collectively, "Defendants"), alleging violations of his constitutional rights.  (Dkt. No. 55.)

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").  (Dkt. No. 65.)[1]  For the

following reasons, the Motion is granted in part and denied in part.

---

        [1] In the caption of the Second Amended Complaint, Plaintiff lists as defendants numerous
other individuals (both identified and unidentified) and municipal entities.  However, no

I.  Background

A.  Factual Background

The factual allegations that follow are derived from Plaintiff's Second Amended Complaint.  While the Court will sometimes refer to Plaintiff's contentions as "alleged," it nonetheless treats them as true for purposes of the instant Motion.  The described events took place at the Westchester County Jail ("WCJ"), where Plaintiff was incarcerated as a pre-trial detainee from at least June 2011 through at least October 2011.  (*See generally* Decl. of Irma W. Cosgriff, Esq. Ex. C ("SAC") 4–6 (Dkt. No. 66).)[2]

On June 10, 2011, Plaintiff was assaulted in the kitchen block by Chuck Jones ("Jones"), another WCJ inmate.  (*Id.* at 5.)  After reporting the incident to corrections officers, Plaintiff was handcuffed and taken to the mental health block by Hubbard.  (*Id.*)

On August 12, 2011, Plaintiff "was repeatedly excessively assaulted" by Morton, Roane, Officer Mack, Officer Tillie, and other corrections officers, "[w]ho came in wearing riot helmets, gasmasks, [s]hields, [and] riot jackets," and "carrying batons[] [and] [a] tear gas dispenser."

---

summons appears to have been served on Captain Watkins, L. Nancy, S. Robert, K.M. Cheverko, H. Gakle, J.D. Pruyne, W. Leste, A. Anthony, C. Lambert, K. Mack, L. Lucien J. Jr., W. Smithoon, Town of Valhalla, B. Fischer, Warden Diaz, Warden Orlando, State of New York Executive Department, or County Sheriff, (*see generally* Dkt.), despite repeated instructions from the Court that the failure to serve could result in dismissal, (*see, e.g.*, Dkt. Nos. 6, 21).  The Court is not aware of any attempts by Plaintiff to serve these other named defendants, and none join the Motion now before the Court.  Moreover, as of the date of this Opinion, "Facility Medical Officers, Staff, Personnel" and "Wardens & Assistances" have not been identified, much less served with a summons and a copy of the Second Amended Complaint.  (*See generally* Dkt.)  As more than 120 days have passed since Plaintiff filed the Second Amended Complaint on March 24, 2015, the Court dismisses, pursuant to Federal Rule of Civil Procedure 4(m), any claims against these individuals and municipal entities.

[2] Because the Second Amended Complaint includes duplicate pages along with unnumbered submissions, for the sake of clarity the Court will cite to Defendants' exhibit, where an ECF-generated page number has been electronically stamped on the top of the document.

2

(*Id.*)[3]  Plaintiff "was forced from his cell[,] forced on the wall [w]here . . . Morton[] [s]tarted using excessive force upon him." (*Id.*)  Though Plaintiff "had informed [the] officers of his broken hand and other injur[ies]," Morton "twist[ed] and chok[ed] [him,] slamming his face into [the] cell door, [and] picking [him] up by the neck . . . ." (*Id.*)  Morton also "roughly put[] [his] elbows and knees [o]n [P]laintiff['s] back." (*Id.*)  The other officers "helped him drag Plaintiff into [his] cell[,] . . . then slamming his face again into [the] cell wall" and "then forcing him butt naked onto [the] bare metal bed while still choking him with [their] elbows and knees [o]n his back . . . ." (*Id.*)  Thereafter, the officers "denied [Plaintiff] any kind of medical care." (*Id.*)  At some point Roane "watched [a] video tape[] [of] [this] illegal excessive force being used without interfering." (*Id.* at 8.)

On September 6, 2011, "Plaintiff was again brutally assaulted by Rasheed Peterson," another WCJ inmate, who rushed into his cell and attacked him. (*Id.* at 6.)  Hubbard "was involved" in "intentionally open[ing] [Plaintiff's] cell" to allow for the assault, as only corrections officers have "authority to handle [the cell doors'] security devices." (*Id.* at 5.)  That same day, Plaintiff was also the victim of a "[c]onspired attack" involving two other inmates. (*Id.* at 6.)  On October 16, 2011, Plaintiff was assaulted in his cell by a different inmate, Harry Irizarry. (*Id.*)

The Second Amended Complaint also includes a number of broad allegations against corrections officers generally.  These include that they stood "around and watch[ed] an illegal beating without interfering," "conspir[ed] to conform disciplinary reports against Plaintiff,"

---

[3] The Second Amended Complaint includes a few other passing references to Officers Mack and Tillie.  (*See* SAC 6 (alleging Mack made Plaintiff clean up feces that other inmates had thrown in his cell); *id.* at 7 (alleging "sexual harassment by . . . Tillie[,] who has a history of violating inmates['] rights").)  Neither officer, however, is a defendant in the instant Action.

"[u]nlawfully confiscated [his] . . . Letter of Exhausted Remedies," and forcibly removed the cast

from Plaintiff's broken hand "without any medical authorization." (*Id.* at 6–7.) Also according

to the Second Amended Complaint, "[h]earing [o]fficers refus[ed] to call witnesses" at Plaintiff's

disciplinary hearing and "fail[ed] to provide [a] meaningful explanation of the finding of

guilty . . . ." (*Id.* at 9.) Plaintiff further alleges that he "was unlawfully confined [for] 35[] days

and charged 50[] dollars [in] sur-charges after [the] attack by . . . Jones, and then after [the

alleged assault by corrections officers on August 12, 2011]." (*Id.* at 7.) Lastly, Plaintiff alleges

that he "was denied any law library clerk, or librarian assistance," despite his "medical needs

[stemming from his] broken right hand . . . ." (*Id.* at 8.)

B.  Procedural Background

Plaintiff commenced the instant Action on July 16, 2012 against Westchester County

Correctional Jail, New York State Commission of Correction, Hubbard, Morton, Roane, Officer

Christopher Lambert ("Lambert"), Sergeant Francesco Imbrogno ("Imbrogno"), and various

unnamed defendants, alleging use of excessive force and denial of medical treatment. (Dkt. No.

2.) By Order dated October 2, 2012, the Court dismissed Plaintiff's claims with respect to

Westchester County Correctional Jail for failure to state a claim and with respect to New York

State Commission of Correction on sovereign immunity grounds. (Dkt. No. 6.) The Court also

directed the Clerk of Court to add the County as a Defendant under Federal Rule of Civil

Procedure 21 and to issue a Summons as to the County, Hubbard, Morton, Roane, Lambert, and

Imbrogno. (*Id.*) Plaintiff was instructed to serve the Summons and Complaint upon each named

Defendant within 120 days of the issuance of the Summons and was informed that failure to

serve could result in dismissal of the Complaint. (*Id.*) The Court also notified Plaintiff that if he

intended to pursue claims against the unnamed defendants, he was to file an Amended Complaint

4

within 30 days of being provided sufficient information for the Court issue a so-called *Valentin* order.  (*Id.*)[4]  On December 5, 2012, the Court noted that Plaintiff did not file an Amended Complaint within that 30-day window.  (Dkt. No. 10.)  As of July 31, 2013, Plaintiff still had not served Imbrogno or Lambert, and by Order the Court dismissed the Action without prejudice as to those individuals.  (Dkt. No. 21.)

At a pre-motion conference held on October 30, 2013, the Court granted Plaintiff 30 days to amend his Complaint.  (Dkt No. 32.)  Instead of filing an amended pleading, Plaintiff filed a Motion for Leave to Amend on January 15, 2014.  (Dkt No. 33.)  On February 11, 2014, the Court granted Plaintiff "one final opportunity to amend his Complaint," extending his time an additional 30 days.  (Dkt No. 35.)

At a pre-motion conference held on May 6, 2014, Plaintiff was given another 60 days to amend his Complaint and to request permission to consolidate this Action with another suit that he previously filed.  (Dkt. No. 37.)  In a letter dated June 18, 2014, Plaintiff requested another extension to file an amended complaint, claiming he had been "fraudulently intentional [sic] boxed in . . . Fishkill Correctional Facility," that his personal property (including grievances and legal documents) had been stolen or destroyed, and that his "access to the[] law library [was] not in [his] control."  (Dkt. No. 38.)  At that time the Court reminded Plaintiff that he had been told there would be no more extensions and found that the reasons stated in his letter were insufficient to grant his request.  (Dkt No. 39.)  Nevertheless, the Court ultimately granted him another extension to file an amended pleading, this time until November 20, 2014.  (Dkt No. 44.)  Plaintiff filed an Amended Complaint on November 24, 2014, naming more than 90 defendants

---

[4] In *Valentin v. Dinkins*, the Second Circuit held that a pro se litigant is entitled to assistance from the district court in identifying a defendant.  121 F.3d 72, 75 (2d Cir. 1997).

and listing the docket numbers of three other cases that had already been dismissed.  (Dkt No. 46.)  By Order dated December 17, 2014, the Court accepted the Amended Complaint for filing but dismissed it for failure to comply with Federal Rule of Civil Procedure 8, as Plaintiff "fail[ed] to clearly allege conduct and/or circumstances that make up his claim."  (Dkt. No. 48.) Plaintiff was given until March 23, 2015 to file an amended pleading.  (Dkt. No. 52.)

On March 24, 2015, Plaintiff filed a Second Amended Complaint, naming more than 20 defendants.  (Dkt. No. 55.)  Pursuant to a scheduling order adopted by the Court on June 16, 2015, (Dkt. No. 60), Defendants filed their Motion and supporting papers on September 10, 2015, (Dkt. Nos. 65–67).  Plaintiff has not submitted any response.[5]

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citation, and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alterations and internal quotation marks omitted).

---

[5] Though Defendants request that their Motion be granted as unopposed, (*see* Dkt. No. 71), the Court resolves the unanswered Motion on the merits, without input from Plaintiff, *see Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) (explaining that district courts should consider the merits of a motion to dismiss rather than automatically grant the motion if a plaintiff fails to respond); *accord Brunson v. Duffy*, 14 F. Supp. 3d 287, 290 (S.D.N.Y. 2014) (considering the merits of an unopposed motion to dismiss).

Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id; see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, No. 13-CV-4384, 2014 WL 182341, at *1 n.1 (S.D.N.Y. Jan. 16, 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 App'x 15 (2d Cir. 2015). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks removed)).

### B. Analysis

Construed liberally, the Second Amended Complaint appears to raise claims for failure to protect, excessive force, denial of due process, violation of Plaintiff's right to access the law library, denial of adequate medical care, and municipal liability. (*See generally* SAC 5–9.)

Defendants move to dismiss Plaintiff's Second Amended Complaint on several grounds: (a) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); (b) Plaintiff's claims, other than the one asserting excessive force against Morton, are barred by the statute of limitations; (c) Plaintiff has failed to plead personal involvement of Hubbard, Morton, or Roane; (d) Hubbard, Morton, and Roane are entitled to qualified immunity; (e) Plaintiff has failed to state a plausible claim under § 1983; and (f) Plaintiff has failed to

adequately allege a *Monell* claim against the County.  (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 1 (Dkt. No. 67).)

    1.  Exhaustion

    Defendants argue that Plaintiff failed to exhaust administrative remedies pursuant to the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Second Circuit has made clear that, in this context, "administrative exhaustion is not a jurisdictional predicate," but rather, "an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).  Accordingly, "defendants bear the burden of proof[,] and prisoner plaintiffs need not plead exhaustion with particularity."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that the exhaustion requirement "must be pleaded and proved by a defendant").  Furthermore, the Second Circuit has recognized particular exceptions to the exhaustion requirement apply when:

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).[6]  Therefore, a claim should only be dismissed for failure to

---

[6]  The Court notes that there is some question whether the second and third prongs remain applicable in light of the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), which held that the PLRA's exhaustion requirement mandates not merely "exhaustion *simpliciter*" but rather "proper exhaustion," i.e. "compliance with an agency's deadlines and other critical procedural rules."  548 U.S. at 83–84, 88, 90.  Indeed, "[s]ubsequent decisions have

exhaust if "non[-]exhaustion is clear from the face of the complaint, and none of the exceptions outlined by the Second Circuit are germane." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

Plaintiff has not pled that he did not exhaust, and at the motion-to-dismiss stage, he need not demonstrate that he did. *See Jones v. Bock*, 549 U.S. 199, 216–17 (2007) (holding that prisoners need not demonstrate exhaustion in their complaints). As its sole reference to the prison grievance system, the Second Amended Complaint alleges that "[c]orrections [o]fficers [u]nlawfully confiscated [Plaintiff's] . . . Letter of Exhausted Remedies." (SAC 7.) While this allegation may suggest a failure to exhaust without accompanying justification, such failure is

---

questioned the continued viability of this framework following the Supreme Court's decision in *Woodford* . . . ." *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011); *see also Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at *4 n.2 (S.D.N.Y. Sept. 17, 2015) ("Following the Supreme Court's decision in *Woodford*, . . . the Second Circuit has noted, without holding, that the second and third prongs of the *Hemphill* analysis—estoppel and special circumstances—may no longer be applicable."). The Court, however, finds it instructive that "the Second Circuit conducted a *Hemphill* analysis in *Amador* itself, 655 F.3d at 102–04, and district courts in this Circuit have continued to apply the *Hemphill* framework following *Woodford* and *Amador*," *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *3 n.4 (S.D.N.Y. Feb. 28, 2015); *see also Rambert v. Mulkins*, No. 11-CV-7421, 2014 WL 2440747, at *11 (S.D.N.Y. May 30, 2014) (noting that "the Second Circuit has left unresolved the continuing vitality of the *Hemphill* exceptions in light of the Supreme Court's ruling in *Woodford v. Ngo*," but concluding that "*Hemphill* remains good law"). Consequently, "[u]ntil the Second Circuit instructs otherwise, the Court will continue to consider the three *Hemphill* exhaustion exceptions." *McClinton v. Connolly*, No. 13-CV-2375, 2014 WL 5020593, at *2 n.4 (S.D.N.Y. Oct. 8, 2014).

not directly evident from the face of the Second Amended Complaint. *See Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 361–62 (S.D.N.Y. 2013) ("[A]mbiguity is not a valid basis for dismissal under *Jones*, which does not require that the plaintiff demonstrate exhaustion in the complaint."); *Johnson v. Westchester Cty. Dep't of Corr. Med. Dep't*, No. 10-CV-6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (denying a motion to dismiss when the complaint was ambiguous about exhaustion); *McCoy*, 255 F. Supp. 2d at 249–50 ("[I]f, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle.").[7]

Defendants, therefore, are not entitled to dismissal on exhaustion grounds.

### 2.  Statute of Limitations

Next, Defendants argue that Plaintiff's claims, apart from his claim for excessive force against Morton, are time barred and must be dismissed. Although "[t]he lapse of a limitations

---

[7] Citing to a grievance form submitted along with the Second Amended Complaint, Defendants claim that Plaintiff "candidly conceded that he only filed one grievance and that he did not fully exhaust that grievance." (Defs.' Mem. 9 (citation omitted).) This contention mischaracterizes the document, which merely shows that one grievance filed by Plaintiff was denied and that he intended to appeal that decision. (*See* SAC 32.) That Plaintiff did not submit documentation evidencing other grievance filings or confirming the pursuit of that appeal does not provide grounds for dismissal under Rule 12(b)(6). *See Dunham v. Conklin*, No. 13-CV-5409, 2014 WL 6646330, at *3 (S.D.N.Y. Oct. 30, 2014) (finding "it is not clear from the face of the complaint that plaintiff has failed to exhaust his administrative remedies" where he "provided no documentation of the steps he took to exhaust his claim" and instead "attached certain documents relating to another grievance [he had] filed"); *Randolph v. City of N.Y. Dep't of Corr.*, No. 05-CV-8820, 2007 WL 2660282, at *6 (S.D.N.Y. Sept. 7, 2007) ("[T]he Supreme Court in effect held that the trial courts may not impose special pleading requirements (including rules requiring specific allegations about exhaustion) on inmates filing suits covered by the PLRA and may not dismiss their complaints based on the inmates' failure to satisfy what amounts to a requirement that inmates plead and demonstrate that they have exhausted their prison remedies." (citing *Jones*, 549 U.S. at 216–17)); *accord Combs v. Valdez*, No. 05-CV-831, 2005 WL 2291626, at *5 (N.D. Tex. Sept. 13, 2005) (concluding "that [the] complaint should not be dismissed for failure to exhaust administrative remedies" where "[the defendants] have simply pointed to a lack of documentation").

period is an affirmative defense that a defendant must plead and prove," a statute of limitations

defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the

face of the complaint." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008);

*see also Zhongwei Zhou v. Wu*, No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3,

2015) (same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209

(S.D.N.Y. 2014) (same).

For claims brought under § 1983, "courts apply the statute of limitations for personal

injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also*

*Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In [§] 1983 actions, the applicable

limitations period is found in the general or residual state statute of limitations for personal

injury actions.'" (alterations and internal quotation marks omitted)).  The statute of limitations

for personal injury actions in New York is three years.  *See Pearl v. City of Long Beach*, 296

F.3d 76, 79 (2d Cir. 2002); *see also* N.Y. C.P.L.R. § 214(5).  "Section 1983 actions filed in New

York are therefore subject to a three-year statute of limitations." *Hogan*, 738 F.3d at 517 (citing,

inter alia, *Pearl*, 296 F.3d at 79); *see also Staten v. Vill. of Monticello*, No. 14-CV-4766, 2015

WL 6473041, at *5 (S.D.N.Y. Oct. 26, 2015) (same).  Federal law determines when a § 1983

cause of action accrues, and the Second Circuit has ruled that "accrual occurs when the plaintiff

knows or has reason to know of the injury which is the basis of his action." *Pearl*, 296 F.3d at

80 (internal quotation marks omitted); *see also Harrison v. New York*, 95 F. Supp. 3d 293, 326

(E.D.N.Y. 2015) (same).

Thus, any failure-to-protect claims accrued on June 10, 2011, September 6, 2011, and

October 16, 2011, the dates of the alleged assaults against Plaintiff. *See Calhoun v. Fischer*, No.

11-CV-567, 2012 WL 4762196, at *2 n.1 (W.D.N.Y. Oct. 3, 2012) (noting "that the statute of

limitations for a [failure-to-protect] claim under 42 U.S.C. § 1983 is three years from the date of the alleged unconstitutional conduct"); *Allen v. N.Y.C. Dep't of Corr.*, No. 06-CV-7205, 2010 WL 1644943, at *7 (S.D.N.Y. Mar. 17, 2010) ("[The] plaintiff's claims for failure to protect and delay of medical care arose on [the day of the alleged assault,] July 28, 2003[,] and hence the limitations deadline for filing was July 28, 2006."), *adopted by* 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010).  Following similar logic, Plaintiff's excessive force claim against Roane accrued on August 12, 2011, when the Second Amended Complaint alleges that the use of force occurred.  *See Jennings v. Municipality of Suffolk Cty.*, No. 11-CV-911, 2013 WL 587892, at *4 (E.D.N.Y. Feb. 13, 2013) ("In the context of an excessive force claim, the clock starts running when the use of force occurred." (internal quotation marks omitted)).  As noted above, Plaintiff filed a timely Complaint on July 16, 2012, alleging August 12, 2011 as the date of the events giving rise to his original claims.  (*See* Compl. 1–2 (Dkt. No. 2).)[8]  His Second Amended Complaint, however, was not filed until March 24, 2015, more than six months after the statute of limitations expired for any of the abovementioned failure-to-protect or excessive force causes of action.  (*See* SAC 1.)  The question then becomes whether these newly raised claims "relate back" to the date of filing of the original Complaint.  *See* Fed. R. Civ. P. 15(c).

Under Rule 15 of the Federal Rules of Civil Procedure, a party may relate an amended complaint back to the date of the original filing when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  *Id.* 15(c)(1)(B).  "The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."

---

[8] Those original claims included allegations of excessive force against Morton, and that cause of action thus faces no hurdle under the statute of limitations.

*Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983) (per curiam) (internal

quotation marks omitted); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 461

(S.D.N.Y. 2013) (same).  Thus, a court must determine "whether adequate notice of the matters

raised in the amended pleading has been given to the opposing party within the statute of

limitations by the general fact situation alleged in the original pleading." *Stevelman v. Alias*

*Research Inc.*, 174 F.3d 79, 86–87 (2d Cir. 1999) (internal quotation marks omitted).  "Where

the amended complaint does not allege a new claim but renders prior allegations more definite

and precise, relation back occurs." *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir.

2006).  On the other hand, "even where an amended complaint tracks the legal theory of the first

complaint, claims that are based on an entirely distinct set of factual allegations will not relate

back." *Id.* (internal quotation marks omitted); *see also Brown v. Leonarde*, No. 11-CV-35, 2013

WL 1866851, at *7 (W.D.N.Y. May 1, 2013) (same).

Here, the original Complaint offered no indication of the failure-to-protect claims;

indeed, Plaintiff did not give the slightest indication of *any* claims stemming from events either

before or after August 12, 2011.  (*See* Compl. 2 (listing August 12, 2011 as the date of events

giving rise to the Action).)  Where, as here, newly added claims are "based on different conduct,

in a different location, and attributable to different [individuals] than the claims set forth in [the

original] pleading," they will not relate back.  *ASARCO LLC v. Goodwin*, 756 F.3d 191, 203 (2d

Cir. 2014), *cert. denied*, 135 S. Ct. 715 (2014); *see also Am. Med. Ass'n v. United Healthcare*

*Corp.*, 00-CV-2800, 2006 WL 3833440, at *12 (S.D.N.Y. Dec. 29, 2006) (noting that "courts

have declined to apply the relation back doctrine to allow the addition of new claims for relief

based on transactions or events not included in the original pleading" (citation and internal

quotation marks omitted)); *accord Brown*, 2013 WL 1866851, at *7 (finding "that the retaliation

and other claims first pled in the [a]mended [c]omplaint do not relate back to the assault claim

pled in the original [c]omplaint because while the retaliation claims are based on [the] plaintiff's

and his family's complaints about the assault they do not arise out of the original factual situation

pled in the complaint"); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, at *4 (E.D.N.Y.

Aug. 14, 2009) (concluding that the "plaintiff's excessive force claim does not 'relate back' to

his earlier complaint," which "assert[ed] an illegal arrest and prosecution for lack of probable

cause").  Accordingly, Plaintiff's failure-to-protect claims are barred by the statute of

limitations.[9]

_____

[9] Were the Court to construe Plaintiff's allegations to also, or alternatively, assert a claim
for conspiracy to violate his civil rights against Hubbard, (*see* SAC 5 (alleging Hubbard "was
involved" in a "conspire[d] attack" on June 10, 2011), or Roane, (*see id.* at 8 (alleging Roane
"participated in a civil conspiracy actionable under [§] 1983" when he "watched . . . illegal
excessive force being used without interfering")), those causes of action would have accrued on
June 10, 2011 and August 12, 2011, respectively, *see Pinaud v. Cty. of Suffolk*, 52 F.3d 1139,
1157 (2d Cir. 1995) ("[W]hen a plaintiff knows or ought to know of a wrong, the statute of
limitations on that claim starts to run, and the later awareness that the actionable wrong was also
part of a conspiracy does not expand the statutory time limit."); *Harrison*, 95 F. Supp. 3d at 327
("[F]or claims alleging civil conspiracies, including conspiracies to violate an individual's civil
rights, the cause of action accrues and the statute of limitations begins to run from the time of
commission of the overt act alleged to have caused damages." (internal quotation marks
omitted)).  Similarly distinct from the alleged events of August 12, 2011, such claims would be
barred under the statute of limitations.

In any event, Plaintiff offers only bare assertions that a conspiracy existed among largely
unidentified individuals.  (*See, e.g.*, SAC 6 (alleging "it had to be conspired for his cell to be
open" because "only correction officers . . . had the authorit[y] to operate these facility devices");
*id.* (alleging that corrections officers engaged in a "conspiracy to conform disciplinary reports
against Plaintiff").)  These sorts of allegations, devoid of any factual support, are insufficient to
allow a claim of conspiracy to violate Plaintiff's civil rights to survive a motion to dismiss.  *See
Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only
conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to
deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive
allegations are insufficient, unless amplified by specific instances of misconduct." (internal
quotation marks omitted)); *Bermudez v. City of N.Y.*, No. 11-CV-750, 2013 WL 593791, at *8
(S.D.N.Y. Feb. 14, 2013) ("Conclusory allegations of conspiracy are insufficient to survive a
motion to dismiss." (alterations and internal quotation marks omitted)).

Plaintiff's excessive force claim against Roane is untimely as well.  This alleged use of excessive force is not "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" because the original Complaint's only allegation concerning Roane is that he had "knowledge" of a letter of exhaustion.  (Compl. 3.)  Because the originally pleaded factual circumstances regarding excessive force implicated Hubbard and Morton *only*, (*see id.*), "the general fact situation alleged in the original pleading" could not have provided Defendants with "adequate notice" of any such claim Plaintiff might raise against Roane, *see Slayton*, 460 F.3d at 228 (internal quotation marks omitted); *accord Jones v. Bernanke*, 557 F.3d 670, 674–75 (D.C. Cir. 2009) ("[E]ven an amendment that shares some elements and some facts in common with the original claim does not relate back if its effect is to fault the defendants for conduct different from that identified in the original complaint." (alterations and internal quotations omitted)).  That the new allegations pertain to the same August 2011 incident is not enough, for the added assertion against Roane does not arise out of the same conduct.  *See Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973) ("[T]he test [under Rule 15(c)] is not contemporaneity but rather adequacy of notice."); *McCarthy v. Associated Clearing Bureau, Inc.*, No. 97-CV-1969, 1999 WL 1995185, at *5 (D. Conn. Sept. 3, 1999) (noting in the context of the relation-back doctrine that "the test is not simply whether the events giving rise to the different complaints occurred at about the same time").  "[E]ven under the most liberal reading, 'not a word in the [C]omplaint even suggested a claim of physical assault [by Roane].'"  *Griffith*, 2009 WL 2524961, at *4 (quoting *Rosenberg*, 478 F.2d at 526).  Given this entirely distinct set of factual allegations, the Court finds Plaintiff's excessive force claim against Roane to be time-barred.

Having found these claims barred by the statute of limitations, the Court need not address their merits.  *See Turner v. Boyle*, 116 F. Supp. 3d 58, 84 n.12 (D. Conn. 2015) (noting that the court "need not address the merits" of claims found to be time-barred); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008) ("Because the [c]ourt finds that a sufficient basis exists for dismissal of [the] [p]laintiffs' complaint on statute of limitations grounds, it need not address the merits of their claims."), *aff'd*, 325 F. App'x 31 (2d Cir. 2009).[10] Defendants' Motion is thus granted with respect to these time-barred claims.

### 3.  Excessive Force Claim Against Morton

Defendants argue that Plaintiff's claim for excessive force against Morton is defective as a matter of law.  "While the Eighth Amendment's protection [against cruel and unusual punishment] does not apply until after conviction and sentence, the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment."  *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks omitted).  Regardless of the amendment under which the claim arises, the legal standard for such claims requires both an objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for the conduct.  *See Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009) ("[T]he standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment.").

---

[10] Nevertheless, the Court pauses to mention that Plaintiff does not specifically allege that Roane "watched [the] video tape[] [of] excessive force being used" at a time when he even had the opportunity to intervene.  (SAC 8.)  As such, the Court cannot construe the Second Amended Complaint as including allegations plausibly holding Roane liable.  *See Samuels v. Fischer*, No. 13-CV-8287, 2016 WL 827781, at *14 (S.D.N.Y. Mar. 2, 2016) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that excessive force is being used, *provided there was a realistic opportunity to intervene to prevent the harm from occurring*." (emphasis added) (internal quotation marks omitted)).

The objective element focuses on the harm done in light of "contemporary standards of decency," *id.* (internal quotation marks omitted); *see also Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (noting that the analysis is "context specific, turning upon contemporary standards of decency" (internal quotation marks omitted)), and asks whether "the deprivation alleged is 'sufficiently serious,' or 'harmful enough,' to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  "Some degree of injury is ordinarily required to state a claim of excessive use of force in violation of the Eighth Amendment," *Taylor v. N.Y. Dep't of Corr.*, No. 10-CV-3819, 2012 WL 2469856, at *4 (S.D.N.Y. June 27, 2012) (alterations and internal quotation marks omitted), though an inmate "need not prove 'significant injury' to make out an excessive force claim," *Griffin*, 193 F.3d at 92.  Nevertheless, "a de minimis use of force will rarely suffice to state a constitutional claim."  *Romano*, 998 F.2d at 105 (italics omitted).

The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (some internal quotations omitted); *see also Vail v. Fischer*, No. 12-CV-1718, 2013 WL 5406637, at *5 (N.D.N.Y. Sept. 25, 2013) (noting that an inmate must show, "subjectively, that the defendant acted wantonly and in bad faith").  A plaintiff must allege, for example, that prison officials used force "maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (internal quotation marks omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (noting this consideration to be "[t]he core judicial inquiry" for an excessive force claim (internal quotation marks omitted)).

18

In claiming that Morton "twist[ed] and chok[ed] [him,] slamming his face into [a] cell door, [and] picking [him] up by the neck," (SAC 5), Plaintiff alleges more than a de minimis use of force.  Indeed, such allegations parallel the degree of force found by other courts to be sufficiently serious under the objective prong.  *See, e.g.*, *Santiago v. Westchester Cty.*, No. 13-CV-1886, 2014 WL 2048201, at *5 (S.D.N.Y. May 19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted his arm, [and] picked him up off the ground while squeezing his throat . . . lead to a plausible inference that the force inflicted was malicious and wanton"); *Taylor v. Wilde*, No. 11-CV-3608, 2012 WL 2860999, at *3 (E.D.N.Y. July 10, 2012) (holding that the "act of 'slamming' . . . is objectively sufficiently serious" to state a claim for relief under the Eighth Amendment (alterations and some internal quotation marks omitted)); *Phelan v. Hersh*, No. 10-CV-11, 2011 WL 6031940, at *12 (N.D.N.Y. Sept. 13, 2011) ("[T]hough [the] [p]laintiff provides sparse details of the incident, his claim suggests that [the defendant] hit him maliciously, multiple times, and without the good-faith effort to maintain discipline.  This is enough to validly state an excessive force claim . . . ."), *adopted by* 2011 WL 6031071 (N.D.N.Y. Dec. 5, 2011); *Charlton v. State of N.Y.*, No. 03-CV-8986, 2006 WL 406315, at *7 (S.D.N.Y. Feb. 22, 2006) (finding the act of repeatedly slamming an inmate against a wall sufficient to satisfy the objective prong of his excessive force claim).

While Plaintiff does not identify specific injuries that he suffered as a result of this incident, Morton's actions may constitute excessive force nonetheless because "the use of entirely gratuitous force is unreasonable and therefore excessive."  *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010); *see also Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").  On the face of the Second Amended

Complaint, it is at least plausible that the force used by Morton was gratuitous, as the allegations of "twisting," "choking," and "slamming" suggest there was "no legitimate penological purpose" for his conduct. *Walsh*, 194 F.3d at 49 (internal quotation marks omitted); *see also Sims v. Artuz*, 230 F.3d 14, 22, 25 (2d Cir. 2000) (vacating judgment dismissing excessive force claim where corrections officers punched the plaintiff several times "without need or provocation"). The Second Amended Complaint gives no suggestion that Plaintiff was uncooperative or threatening at the times of the relevant incident, nor do the allegations suggest other extenuating circumstances. Thus, the Court cannot say—at least at the motion-to-dismiss stage—that this force was applied "in a good faith effort to maintain or restore discipline," rather than "maliciously or sadistically" to cause harm. *See Boddie*, 105 F.3d at 862 (internal quotation marks omitted). Plaintiff thereby has pled sufficient factual allegations to state a claim for excessive force against Morton.

Nonetheless, Defendants argue that such a claim is barred by the doctrine of qualified immunity. In § 1983 excessive force cases, a claim of qualified immunity is evaluated by inquiring: (1) whether "the facts, taken in the light most favorable to the plaintiff, show a constitutional violation," i.e. that "the alleged use of excessive force was objectively reasonable," and (2) "whether the constitutional right was clearly established at the time of the constitutional violation," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003). Because "[i]t is indisputable that freedom from the use of excessive force is a clearly established constitutional right," *Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005), the issue here is whether it was objectively reasonable for Morton to believe that his acts did not violate Plaintiff's right to be free from the use of excessive force.

That inquiry, however, "turns on factual questions that cannot be resolved at this stage of the proceedings." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002); *see also Woodhouse v. City of Mount Vernon*, No. 13-CV-189, 2016 WL 354896, at *6 (S.D.N.Y. Jan. 27, 2016) ("The claim may not be dismissed on qualified immunity grounds because [the plaintiff] sufficiently alleged a claim of excessive force and the right to be free from excessive force is clearly established."); *Maloney v. Cty. of Nassau*, 623 F. Supp. 2d 277, 292 (E.D.N.Y. 2007) ("Because this defense necessarily involves a fact-specific inquiry, it is generally premature to address the defense of qualified immunity in a motion to dismiss." (alterations and internal quotation marks omitted)).  The Court, therefore, will not dismiss on qualified immunity grounds at this time.

Accordingly, Defendants' Motion is denied as to Plaintiff's excessive force claim against Morton.

### 4.  Personal Involvement

Defendants further contend that Plaintiff's other claims against Morton, Roane, and Hubbard ("Individual Defendants") should be dismissed for failure to allege personal involvement.  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Robinson v. City of N.Y.*, No. 10-CV-4947, 2011 WL 318093, at *3 (E.D.N.Y. Jan. 31, 2011) (noting that a plaintiff "must name individual defendants who were personally involved in the wrongdoing or misconduct" in order to state a claim under § 1983).

To the extent the Second Amended Complaint can be construed to put forth claims for denial of due process, violation of right to access, and denial of adequate medical care, such

21

claims fail on the basis that there are no allegations whatsoever suggesting which, or any, Individual Defendant was personally involved in the purported violations.  *See Lovick*, 2014 WL 3778184, at *3 (dismissing § 1983 claims where the complaint contained "no allegations whatsoever indicating that [the defendants] were personally involved in the purported violations" of the plaintiff's constitutional rights).[11]  Simply put, Plaintiff makes no mention of Morton, Roane, or Hubbard among these broad-sweeping assertions against "Corrections Officers" and "Hearing Officers."  (*See* SAC 8–9.)

Defendants, therefore, are entitled to dismissal of any remaining causes of action against Morton, Roane, or Hubbard.

### 5. *Monell*

Defendants also argue that any claims against the County should be dismissed because Plaintiff has failed to satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).  Rather, for a plaintiff to prevail on

---

[11] With "the 'special solicitude' that is appropriately accorded to pro se litigants," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (italics omitted), the Court interprets the Second Amended Complaint to assert due process claims on the basis that Plaintiff "was unlawfully confined" and that the officials presiding over his disciplinary hearing not only "refus[ed] to call witnesses" but also "fail[ed] to provide [a] meaningful explanation of the finding of guilty," (SAC 7, 9).  Plaintiff also appears to raise a claim for denial of access to the law library, (*see id.* at 8 (alleging he "was denied any law library clerk, or librarian assistance," despite his "medical needs [stemming his] broken right hand")), and for inadequate medical care, (*see id.* ("Plaintiff was repeatedly denied any medical proper [sic] treatments for [his] broken right hand.")).

a § 1983 claim against a municipal employer, he must satisfy the requirements set forth in

*Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend

municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy

of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Hunter v. City of*

*N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to

§ 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or

custom that caused injury and a direct causal connection between that policy or custom and the

deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  In

addition, a plaintiff must establish a causal link between the municipality's policy, custom, or

practice and the alleged constitutional injury.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d

Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the alleged injury" (internal quotation marks

omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y.

Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and

the alleged constitutional deprivation" (internal quotation marks omitted)); *Johnson v. City of*

*N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff

must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (alteration and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). There are at least two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (footnote omitted). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

According to the Second Amended Complaint, the County "repeated[ly] deprived [P]laintiff of a federally protected right pursuant to . . . an identifiable municipal action."  (SAC 7.)  However, "[c]onclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim."  *Maynard v. City of N.Y.*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (reaffirming "that an allegation of municipal policy or custom would be insufficient if wholly conclusory").  Plaintiff provides no such specific factual allegations, instead merely referencing "patterns of [u]nconstitutional [v]iolations" and "unconstitutional [p]ractices [or] [c]ustoms" without further explanation.  (SAC 6.)  These bare assertions will not suffice, *see 5 Borough Pawn, LLC v. City of N.Y.*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution"); *cf. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"), and Plaintiff's claim against the County is thereby dismissed.

### III.  Conclusion

For the foregoing reasons, the Court denies Defendants' Motion To Dismiss with respect to Plaintiff's excessive force claim against Morton and grants it with prejudice in all other respects.[12]

---

[12] While "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once," *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (italics omitted); *see also McGee v. Pallito*, No. 10-CV-11, 2014 WL 360289, at *12 (D. Vt. Feb. 3, 2014) (noting that "[t]he Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend *at least once*" (emphasis added) (italics

In light of the fact that Plaintiff has failed to respond to Defendants' Motion and has not

communicated with the Court in any way since the pre-motion conference held on June 15, 2015,

Plaintiff is ordered to notify the Court of his intention to pursue this Action within 14 days or

risk dismissal of his case for failure to prosecute.

The Clerk of Court is respectfully requested to terminate the pending Motion. (Dkt. No.

65.)

SO ORDERED.

Dated:          March 30, 2016
                White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

omitted)), here the Court has already twice granted Plaintiff leave to amend. Moreover, "[t]he
problem with [his] causes of action is substantive; better pleading will not cure it." *Cuoco v.
Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Lastra v. Barnes & Noble Bookstore*, No.
11-CV-2173, 2012 WL 12876, at *9 (S.D.N.Y. Jan. 3, 2012) (dismissing with prejudice a pro se
complaint that was "not simply 'inadequately or inartfully pleaded,' but rather contain[ed]
substantive problems such that an amended pleading would be futile"), *aff'd*, 523 F. App'x 32
(2d Cir. 2013).